UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **LEROY CARTER, JR.,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:02 CV 1456 LMB |
| ) | |
| **AL LUEBBERS, and** ) | |
| **JEREMIAH "JAY" NIXON**[1] ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the Petition of Leroy Carter, Jr. for a Writ of Habeas Corpus under 28 U.S.C. § 2254. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636(c).

## Procedural History

Petitioner is presently incarcerated at the Farmington Correctional Center in Farmington, Missouri, pursuant to the judgment of the Circuit Court of the City of St. Louis, Missouri. See Respondent's Exhibit B-1 at 75-78. Petitioner was found guilty after a jury trial of two counts of attempted forcible rape and two counts of kidnapping, and sentenced to consecutive terms of seven years imprisonment on each count of attempted forcible rape and ten years imprisonment on each count of kidnapping. See id.

---

[1]The Attorney General of the State of Missouri is a proper party respondent, because petitioner is challenging present and future sentences in this action. See Rule 2 (b), Rules Governing Section 2254 proceedings in the United States District Courts.

- 1 -

Petitioner raised a single point on direct appeal of his convictions. See Resp't Ex. C at 5. Petitioner argued that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence as to the kidnapping counts because: (a) the facts constituting the kidnapping counts were incidental to that of the attempted rape counts; and (b) the double jeopardy clause prohibits him from being convicted of both the kidnapping and the rape counts because the facts constituting the kidnapping and the attempted rape counts were a continuing course of action. See id. On September 28, 1999, the Missouri Court of Appeals for the Eastern District affirmed petitioner's convictions in an unpublished order opinion. See Resp't Ex. E.

On November 17, 1999, petitioner filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence of the Circuit Court of the City of St. Louis pursuant to Missouri Supreme Court Rule 29.15. See Resp't Ex. F at 3-8. After appointment of counsel, petitioner filed a First Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing. See Resp't Ex. F at 13-32. In this motion, petitioner argued that he received ineffective assistance of counsel for the following reasons: (1) trial counsel failed to utilize a peremptory strike to disqualify juror Robert Kellin; (2) trial counsel failed to object to a portion of the State's closing argument; and (3) trial counsel failed to object to the State's inquiry that elicited testimony regarding the percentage of time in which the evidence technician retrieved usable fingerprints. See id. On November 5, 2001, the motion court denied petitioner's motion for postconviction relief in all respects without a hearing. See id. at 42-46. Petitioner timely filed a notice of appeal from the denial of postconviction relief. See id. at 48.

Petitioner raised two points on the appeal of the denial of his postconviction relief motion. See Resp't Ex. G at 12-15. In his first point, petitioner argued that the motion court clearly erred

in denying, without a hearing, his postconviction relief motion because petitioner was denied effective assistance of counsel in that trial counsel failed to object to the prosecuting attorney's closing argument when the prosecuting attorney invited the jury to place themselves in the situation of the victims. See id. at 12. In his second point, petitioner argued that trial counsel was ineffective for failing to strike Juror Robert Kellin because Juror Kellin responded on voir dire that he had to hear the defendant's testimony in order to find him not guilty. See id. At 14. In a memorandum opinion filed on August 20, 2002, the Missouri Court of Appeals for the Eastern District affirmed the denial of postconviction relief. See Resp't Ex. I. With regard to petitioner's first point, the Court of Appeals found that the prosecuting attorney's comments during closing argument did not rise to the level of improper personalization because they were brief, isolated, and non-graphic. See id. at 5. Regarding petitioner's second point, the Court of Appeals held that Juror Kellin's statement that he would prefer to hear petitioner testify did not prejudice the verdict against petitioner. See id. at 6.

Petitioner then filed a petition for a writ of habeas corpus, raising four grounds for relief. (Document Number 5). Petitioner argues that he received ineffective assistance of counsel for the following reasons: (1) "[t]hey did not have identifiable [sic] finger prints;" (2) "[j]ury formeman [sic] stated that I had to testify in order to be found not guilty;" (3) "insufficient evidence to warrant a conviction;" and (4) "trial counsel failed to act as a reasonable competant [sic] attorney would have given similar circumstances." See id. at 5-6. Respondent filed a response arguing that petitioner has procedurally defaulted his first, third, and fourth grounds for relief and that, even if plaintiff's claims were not barred, they fail on their merits as well. (Doc. No. 10).

**Factual Background**

Prosecution witnesses Breck Uhles and Andrea Backhoff testified that at approximately 12:30 a.m. on March 31, 1997, they left The Grind coffee shop in the Central West End neighborhood of St. Louis. See Resp't Ex. A at 196, 267. Ms. Uhles and Ms. Backhoff testified that as they were pulling out of a parking lot near The Grind in Ms. Uhles's car, they saw a man standing in the middle of the driveway exit waving his hands to get their attention. See id. at 198, 268. Ms. Uhles stated that they were able to see this man because there were lights in the parking lot and Ms. Uhles's car headlights were shining on him. See id. at 198. Ms. Uhles described the man as "a black man with a bald head," wearing "a khaki outfit with a red shirt underneath." Id. Ms. Backhoff testified that the man was wearing "khaki colored pants and khaki colored long sleeved buttoned up shirt and a red shirt underneath." Id. at 268-69. Ms. Backhoff further testified that the man was about 5 feet 8 inches tall, was in his late 20s, and he had a shaved head. See id. at 269.

Ms. Uhles and Ms. Backhoff testified that the man walked up to Ms. Uhles's window and asked for a ride to the gas station because his car had run out of gas. See id. at 198-99, 268-69. They testified that Ms. Uhles told the man that she could not give him a ride, yet the man persisted. See id. at 199, 269. Ms. Uhles and Ms. Backhoff testified that the man opened Ms. Uhles's car door, told them that he had a gun, and told Ms. Uhles to get in the back seat of the car. See id. at 199, 269. Ms. Uhles testified that she complied with the man's request, and the man got into her car and drove out of the parking lot. See id. at 199. Ms. Uhles and Ms. Backhoff testified that the man told them that he wanted to have sex with them and that as long as they cooperated he would not shoot them. See id. at 200, 270. They testified that the man then drove to Forest Park in

search of a quiet place where he could have sex with them.  See id.

Ms. Uhles and Ms. Backhoff testified that the man parked the car in the back of the Muny parking lot and told Ms. Backhoff that she was "going first" and that she should take her pants off. See id. at 200, 270-71.  They testified that Ms. Uhles pleaded with the man not to rape Ms. Backhoff and told him that he could take her car and money instead.  See id. at 200-01, 271.  Ms. Backhoff testified that the man undid his pants and put his left arm on her right shoulder.  See id. at 271.  She testified that after the man put his hand on her shoulder, she bit him on his forearm, and opened the car door.  See id.  Ms. Backhoff testified that she got out of the car and ran to Barnes Hospital, where she called the police.  See id. at 272-74.

Ms. Uhles testified that the man then drove out of the parking lot and started driving around again.  See id. at 203.  Ms. Uhles testified that she picked up her cellular phone that was between the two front seats and tried to call 911.  See id.  She testified that instead of dialing 911, she inadvertently called Ms. Backhoff's house.  See id.  Ms. Uhles testified that Ms. Backhoff's mother answered the phone, and she told her where she was and that a man was about to rape her. See id.  Ms. Uhles testified that while she was on the phone, the man swatted at her and told her to get off of the phone.  See id. at 204.  She testified that the man eventually hit a curb and popped the front left tire, at which time he stopped the car and ran away.  See id. at 204-05.

Ms. Uhles testified that after the man left, she called 911 and gave them a description of the man.  See id. at 206.  She told the police that the man was between 20 and 30 years old, was about 5 feet 6 inches tall, and was wearing a khaki outfit, with a red shirt underneath.  See id..  Ms. Uhles testified that police then picked her up and told her that they had caught somebody that matched her description.  See id. at 207.  She testified that police took her to the location where they were

holding the suspect, took the suspect out of a police car, and shined a light on his face. See id. Ms. Uhles testified that she recognized the man's face and clothing and told police that he was the man whom she had described. See id. at 208. She then identified petitioner as the man whom she identified to police that night. See id.

Ms. Backhoff testified that she also provided a description of the man to police. See id. at 274. Ms. Backhoff described the man as short, with a shaved head, and wearing khaki colored pants with a khaki colored shirt and a red shirt underneath. See id. Ms. Backhoff testified that police picked her up at Barnes Hospital and took her to the place where the police were holding the suspect. See id. at 275. Ms. Bachhoff testified that when she arrived at the location where police were holding the suspect, she recognized the man's eyes and his clothing. See id. Ms. Backhoff identified petitioner as the man she identified to police that night. See id. at 276.

Prosecution witness Barbara Panos, a police officer in the Evidence Technician Unit of the St. Louis City Police Department, testified that she was called to the scene on the night in question to retrieve fingerprints from Ms. Uhles's vehicle. See id. at 246-47. Officer Panos testified that she dusted the vehicle for fingerprints but was unable to retrieve any fingerprints because the surface of the vehicle was too dirty. See id. at 247-49. Officer Panos testified that it was not unusual to find no fingerprints and that the absence of fingerprints does not mean that no one touched the vehicle. See id. at 249-50.

Prosecution witness Andre Watson, a sex crime investigator with the St. Louis City Police Department, testified that he was asked to seize some clothes from the suspect. See id. at 283-284. Detective Watson testified that he seized a tan work shirt, tan pants, and a red sweatshirt from the suspect. See id. at 284-85. Detective Watson identified petitioner as the person from

whom he seized the clothing. See id. at 285-86.

Prosecution witness Calzona Hall, Jr., a police officer with the St. Louis City Police Department, testified that he was on duty on the night in question. See id. at 288. Officer Hall testified that a description was broadcast over the department radio of a subject that had just committed a crime. See id. at 289. Officer Hall stated that the description was of a black male, approximately 5 feet 6 inches tall, wearing a button-down khaki shirt with a red shirt underneath. See id. Officer Hall testified that he saw a subject matching that description walking down the street and he stopped the subject. See id. Officer Hall testified that two victims subsequently identified the subject. See id. at 289-90. Officer Hall identified the defendant as the man he arrested. See id. at 290.

Darlene Garner, Custodian of Records for Ameritech Cellular, testified as the final witness for the prosecution. See id. at 302. Ms. Garner testified that she produced records regarding a cellular phone account in response to a subpoena from the prosecution's office. See id. Ms. Garner testified that, according to the records from Kay Uhles's account, two calls were made on March 31, 1997. See id. at 303. Ms. Garner stated that the first call was made at 12:53 a.m., and the second call was made at 12:58 a.m. See id. Ms. Garner testified that a call to 911 does not appear because they are "unbilled calls" and unbilled calls do not appear on records. See id. at 304.

Petitioner testified that before he was arrested, he lived in the Central West End. See id. at 313. He testified that on the night in question, his girlfriend, Joyce Halford, was visiting at his apartment. See id. at 314. Petitioner testified that he left his apartment at about 12:30 a.m. to go to his friend's house to get money to buy cigarettes. See id. at 315. He testified that his friend,

Jimmy Joy, lives on Forest Park Avenue. See id. Petitioner testified that his friend was not home, so he began walking back home. See id. at 316.

Petitioner testified that he was stopped by police while walking home, who told him that he fit the description of a man who had just committed a crime in the area. See id. He testified that he did not run from police but rather he complied with the police officer's requests. See id. at 317. Petitioner testified that his middle front tooth is gold. See id. He testified that he had never seen Ms. Uhles or Ms. Backhoff, he had never talked to them, he had not been at The Grind that evening, he had not been in the parking lot across from The Grind, and he did not commit the crimes with which he was charged. See id. at 319, 320-23.

Defense witness Joyce Halford testified that she is petitioner's lover, and that she was at his apartment on the night in question. See id. at 325-26. Ms. Halford testified that petitioner left the apartment at about 12:30 a.m. that night to go to a friend's house to get a pack of cigarettes. See id. at 327. Ms. Halford testified that she cared for petitioner and she would do anything legal to help him if she thought that he was being unjustly accused. See id. at 328-30.

## Discussion

### A. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529 U.S. at 413, 120 S.Ct. 1523. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 120 S.Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410, 120 S.Ct. 1522.

**B.     Procedural Default**

Respondent argues that petitioner's first, third, and fourth grounds for relief should be denied because petitioner has procedurally defaulted these claims by not presenting them to the appropriate state court. For the reasons explained herein, the undersigned agrees with this assessment.

It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. See 28 U.S.C. § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994). In addressing this issue, a federal court must give deference to state courts and should place great importance on state procedural rules. See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989). By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'" Id. (quoting Martin v. Solem, 801 F.2d 324, 330 (8th Cir. 1986)(internal citations omitted). To avoid procedural default, "Missouri procedure requires that a claim be presented 'at each step of the judicial process.'" Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994)(quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)), cert. denied, 513 U.S. 983, 115 S. Ct. 462, 130 L.Ed.2d 370 (1994). If a petitioner cannot demonstrate cause, then the court need not determine whether the petitioner has suffered actual prejudice. See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir. 1987), cert. denied, 485 U.S. 907, 108 S. Ct. 1080, 99 L.Ed.2d 239 (1988).

In the present case, petitioner did not bring the claims contained in his first, third, or fourth grounds for relief in his direct appeal, postconviction relief motion, or in his appeal from the denial of postconviction relief. As such, petitioner has defaulted these claims by failing "to present them to the Missouri courts at any stage of his direct appeal or his post-conviction proceedings." Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997).

Further, petitioner fails to allege "cause" for his procedural default. As such, this court need not address the "actual prejudice" prong of the inquiry. See Leggins, 822 F.2d at 768. A

federal habeas court may also reach the merits of procedurally defaulted claims where the petitioner can demonstrate that a "miscarriage of justice" exception applies. This narrow exception is limited to extraordinary circumstances where actual innocence can be demonstrated. See Murray v. Carrier, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). The petitioner must show that a constitutional violation "probably resulted" in the conviction of an innocent person. See Schlup v. Delo, 513 U.S. 298, 326-29, 115 S. Ct. 851, 867-68, 130 L.Ed.2d 808 (1995). Petitioner does not claim in his petition that his procedural default should be excused under the miscarriage of justice exception, nor does the evidence show that petitioner could demonstrate actual innocence. Thus, petitioner has procedurally defaulted his claim.

**C.     Petitioner's Claims**

The court has already pointed out that petitioner has procedurally defaulted his first, third, and fourth grounds for relief. Even if these claims were not procedurally defaulted, they fail on their merits as well.

**1.     Ground One**

In his first ground for relief, petitioner claims that he was denied effective assistance of counsel in that "[t]hey did not have identifiable finger prints." See Petition at 5. Petitioner's claim is presumably based upon the fact that the evidence technician was unable to retrieve identifiable fingerprints from the victim's car. Petitioner appears to be alleging that in order for the jury to find him guilty, the State was required to produce evidence of identifiable fingerprints from the victim's car, and that trial counsel was ineffective in failing to object to the absence of identifiable fingerprints.

A federal court is limited "to deciding whether a conviction violated the Constitution, laws

or treaties of the Unite States." Gee v. Groose, 110 F.3d 1346, 1349 (8th Cir. 1997). As such, claims that do not reach constitutional magnitude cannot be addressed in a petition for habeas corpus. See id. Here, petitioner fails to allege a violation of his constitutional rights. Rather, petitioner's claim is based upon the erroneous belief that the State was required to produce identifiable fingerprints. Thus, petitioner's claim is noncognizable as a proper ground for granting a writ of habeas corpus.

Accordingly, petitioner's first ground for relief is denied.

**2.     Ground Two**

In his second ground for relief, petitioner argues that he was denied effective assistance of counsel in that the "[j]ury formeman [sic] stated that I had to testify in order to be found not guilty." Petition at 5. Petitioner is presumably referring to Juror Robert Kellin, who indicated in voir dire that he would prefer to hear testimony from petitioner. Petitioner argued in both his motion for postconviction relief and on appeal from the denial of postconviction relief that trial counsel was ineffective in failing to strike Juror Robert Kellin. Petitioner appears to be raising this same claim.

Petitioner's claim of ineffective assistance of trial counsel is evaluated under the Strickland v. Washington standard. To prevail on a Strickland claim, a petitioner must demonstrate (1) that the attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and (2) that the attorney's action or inaction prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "Prejudice is shown if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Harris v.

Bowersox, 184 F.3d 744, 756 (8th Cir. 1999)(quoting Strickland, 466 U.S. at 694, 104 S. Ct. 2052).

In the instant case, petitioner's claim that he received ineffective assistance of counsel because trial counsel failed to strike Juror Kellin fails. The following exchange took place during voir dire:

> [DEFENSE COUNSEL]: [I]s anybody going to require us to produce [petitioner] to testify before they can return the not guilty verdict?
>
> ...
>
> [VENIREPERSON KELLIN]: But I think I, I still want to hear him testify. That's the only way to get all the information.
>
> ...
>
> [DEFENSE COUNSEL]: Okay. Mr. Kellin?
>
> [VENIREPERSON KELLIN]: Yes.
>
> [DEFENSE COUNSEL]: An example. They have their shot, they don't prove their case, we can sit there and agree to it, can you return a verdict of not guilty? Just hearing their side?
>
> [VENIREPERSON KELLIN]: No.
>
> [DEFENSE COUNSEL]: All right. You're going to require that [petitioner] testify or produce some type of witness?
>
> [VENIREPERSON KELLIN]: Yes.
>
> ...
>
> [DEFENSE COUNSEL]: Even if we don't produce a witness and in your mind they haven't proven their case, you are going to require a witness?
>
> [VENIREPERSON KELLIN]: I would prefer it.

See Resp't Ex. A at 129-31. The Missouri Court of Appeals held as follows with respect to

petitioner's claim:

> We find that Kellin's statement that he would prefer to hear [petitioner] testify did not prejudice the verdict against [petitioner]. Unlike the defendant in McKee, [petitioner] did take the stand and testify in the instant case on his own behalf. [Petitioner's] testimony in the instant case satisfied the exact condition of Kellin's response that indicated he needed to "get all of the information."
>
> We agree with the state that [petitioner's] case is similar to State v. Hadley, 815 S.W.2d 422 (Mo. Banc 1991). In Hadley, the Supreme Court ruled that failure to strike a juror for cause because he wished to hear the defendant testify was not reversible error where the defendant testified at trial. Id. At 424. The court stated that "[w]hen defendant took the stand, the possibility of prejudice disclosed by [the juror's] voir dire examination evaporated." Id.
>
> We do not find that Kellin's statement that he would prefer to hear from [petitioner] so that he could "get all the information" indicated a bias against [petitioner]. Kellin never indicated an unwillingness to follow the court's instructions to the jury, nor did he indicate that he was predisposed to support either the prosecution or the defense. [Petitioner's] second point is denied.

Resp't Ex. I at 6-7.

Petitioner has not demonstrated that the decision of the Missouri Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law. The Missouri Court of Appeals properly stated the standard set forth in Strickland, and applied it to petitioner's claim. As the Missouri Court of Appeals correctly stated, Juror Kellin's statements did not indicate that he was unwilling to follow the trial court's instructions. Further, petitioner is unable to demonstrate prejudice because petitioner did testify at trial, thereby eliminating any possibility of prejudice to petitioner.

Accordingly, petitioner's second ground for relief is denied.

**3.     Ground Three**

In his third ground for relief, petitioner claims that he was denied effective assistance of

counsel in that there was "insufficient evidence to warrant a conviction." Petition at 6. Petitioner does not provide any factual support for this allegation.

The standard for reviewing the sufficiency of the evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979). In Jackson, the United States Supreme Court held that the appropriate inquiry under due process for reviewing the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S. Ct. at 2789. Further, "[t]he state is 'not required to rule out every hypothesis except that of guilt beyond a reasonable doubt.' " Flieger v. Delo, 16 F.3d 878, 883 (8th Cir. 1994) (quoting Perez v. Groose, 973 F.2d 630, 634 (8th Cir. 1992)). The federal court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and must defer to that resolution." Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994). This Circuit has "recognized that the verdict 'may be based in whole or in part on circumstantial evidence.' " Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996) (quoting United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996)).

A review of the record reveals that the evidence adduced at trial was clearly sufficient to support the verdict. One need only examine the testimony described in the factual background section of this Memorandum and Order to conclude that there existed ample evidence to support the verdict in this case. Hence, an extended discussion of that evidence here is not warranted.

Further, trial counsel did move for Judgment of Acquittal at the Close of the State's Case. See id. at 311. Trial counsel argued that the State had not met its burden of proof as to all of the counts, especially as to the attempted rape of Ms. Uhles and the kidnapping charges. See id. In

addition, trial counsel moved for Directed Verdict at the Close of all the Evidence. See id. at 338-39. As such, petitioner has failed to demonstrate that counsel was ineffective.

Accordingly, petitioner's third ground for relief is denied.

### 4. Ground Four

In his fourth ground for relief, petitioner argues that he was denied effective assistance of counsel in that "trial counsel failed to act as a reasonable competent [sic] attorney would have given similar circumstances." Petition at 6. Petitioner, however, never alleges what actions or inactions by his attorney constituted ineffective assistance. In light of this deficiency, it cannot be said that petitioner's trial counsel rendered ineffective assistance based on petitioner's naked assertion alone.

Accordingly, petitioner's fourth ground for relief is denied.

**D.    Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.  See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999).  A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997)(citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)); Tokar v. Bowersox, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998).  In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right.  The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no certificate of appealability shall be issued.

**ORDER**

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED**, **ADJUDGED AND DECREED** that petitioner be denied a certificate of appealability if petitioner seeks to appeal this judgment of dismissal.

Dated this   12th   day of September, 2005.

*/s/ Lewis M. Blanton*

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE